**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 26 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | No. 03-4304 |
| v. | Dist. of Utah |
| CINDY LEWIS, | (D.C. No. 02-CR-740-DS) |
| Defendant-Appellant. | |

**ORDER AND JUDGMENT** [*]

Before **KELLY** , **HENRY** , and **TYMKOVICH** , Circuit Judges. [**]

Cindy Lewis appeals the order of restitution [1] imposed by the United States

District Court for the District of Utah. Lewis had pled guilty to one count of

making false statements to a Postal Inspector who was investigating a check

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders; nevertheless, an order may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

[1] Lewis was sentenced to five months in prison and ordered to pay $29,816.14 in restitution. Although Lewis has served her sentence, this appeal is not moot as she has not fully paid the restitution.

cashing scheme, in violation of 18 U.S.C. § 1001. Lewis claims that the district court violated United States Sentencing Guideline § 1B1.3(a)(1) (USSG) and *Blakely v. Washington,* 124 S. Ct. 2531 (2004), by making findings of fact during the restitution hearing when it considered her involvement in the check cashing scheme as relevant conduct for sentencing and restitution purposes. Finding no error by the district court, we affirm.

Background

A grand jury issued a four-count indictment against Lewis charging her with conspiracy to steal and alter checks in the U.S. mail, making false statements to a Postal Inspector, and two counts of possession of stolen mail. On June 17, 2003, Lewis entered into a plea agreement with the United States in which she pled guilty to making false statements to the Postal Inspector and agreed to "pay restitution, if any, for all relevant conduct (USSG § 1B1.3) *including counts to which I have not pled guilty* and conduct charged in the indictment to be determined at a restitution hearing." (App. Vol. I, 10-11) (emphasis added). In exchange, the government agreed to dismiss the remaining three counts of the indictment and recommend a two-level reduction in her sentence for acceptance of responsibility. The government also agreed to recommend a sentence on the "low end of the guideline range."

Before the restitution hearing took place, Lewis contested what the court

could consider as relevant conduct for purposes of restitution and sentence enhancement. Under USSG § 2B1.1(b), a six-level upward adjustment is appropriate if loss resulting from a crime involving fraud exceeds $30,000, and a two-level upward adjustment is applicable if the fraud victimizes more than ten persons. Lewis asserted that her actions during the check cashing scheme were not relevant conduct under USSG § 1B1.3(a)(1) because they took place several months before she made false statements to the Postal Inspector, the only crime for which she was convicted.

At the restitution hearing, the district court heard testimony from Lewis's alleged co-conspirator, a handwriting expert who examined certain documents for evidence of forgery, the Postal Inspector, and Lewis's ex-husband. The court also examined checks written, altered, and/or cashed by Lewis. In a written order, the district court rejected Lewis's arguments and found that Lewis's false statements were part of a common scheme and plan, *see* USSG § 1B1.3, to steal mail, cash fraudulent checks, and cover up the crimes. That common scheme and plan included conduct that resulted in actual and potential losses exceeding $30,000. At the sentencing hearing held two months later, the court found Lewis's relevant conduct included the facts and findings as set forth in the presentence report,

found the offense to be a total of level twelve,[2] sentenced Lewis to five months in prison plus twelve months probation, and ordered her to pay restitution in the amount of $29,816.14.[3]

Discussion

I.

We review "the legality of a restitution order de novo, . . . the factual findings underlying the order for clear error and the amount of restitution for abuse of discretion." *United States v. Osborne*, 332 F.3d 1307, 1314 (10th Cir. 2003).

Lewis argues that the court violated USSG § 1B1.3(a)(1) when it considered her involvement in the check cashing scheme as relevant conduct. Lewis reads this particular guideline to mean that a court can only consider as relevant conduct that conduct which occurred literally "during the commission of, . . . in preparation for, . . . or in the course of attempting to avoid detection for" the offense for which she was convicted. USSG § 1B1.3(a)(1). As such, Lewis

---

[2] A base level six for the offense of lying to the Postal Inspector; a six-level enhancement for losses exceeding $30,000; a two-level enhancement for losses stemming from more than ten but less than fifty victims; and a two-level downward adjustment for acceptance of responsibility.

[3] The actual loss, and thereby the amount Lewis was required to pay as restitution, was less than the total amount involved in the scheme because some forged checks were recovered before they could be negotiated. *See* App. Vol. II, 73, 75.

argues that none of her conduct during the actual check cashing scheme is relevant for purposes of USSG § 1B1.3(a)(1) because it did not occur during, in preparation of, or in an attempt to cover the crime of making false statements.

Lewis's plea agreement, however, specifically allowed for the court to consider her conduct, for purposes of restitution, as it related to all other counts of the indictment, including those to which she did not plead guilty. Thus, Lewis's interpretation of the guideline is irrelevant because her plea agreement determined that which the district court could consider as relevant conduct, including other uncharged conduct. In any event, the district court did not err in finding the conduct was part of a "common scheme or plan" under USSG § 1B1.3(a)(2) since her false statements were designed to evade detection of her thefts. Therefore, we find that the district court did not violate USSG § 1B1.3(a)(1) when it considered Lewis's involvement in the check cashing scheme as relevant conduct.

II.

In her Statement in Advance of Restitution Hearing, Lewis argued that she was unfairly surprised, in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). She claimed the government improperly sought to include her actions during the check cashing scheme, which she lied about to the inspector, as relevant conduct. Now on appeal, taking a slightly different approach, Lewis

argues that *Apprendi* stands for the proposition that the maximum sentence a judge may impose is that which is supported by facts as found by a jury. Thus, Lewis argues, in light of the Supreme Court's recent decision in *Blakely v. Washington* 124 S. Ct. 2531 (2004), that the district court violated her Sixth Amendment rights when it considered the check cashing scheme as relevant conduct because those facts were not found by a jury. *See* Aplt. Motion to Amend Opening Brief, p.2 (hereinafter "Aplt. Mtn.").

The Supreme Court in *Blakely* held that Washington State's sentencing guidelines ran afoul of the Sixth Amendment right to trial by jury because they permitted a defendant's sentence to be increased based on facts not proved beyond a reasonable doubt. *See Blakely*, 124 S. Ct. at 2543. In *Blakely*, the Court found that "the relevant 'statutory maximum' is . . . the maximum [sentence a judge] may impose *without* any additional findings." *Id.* at 2537 (emphasis in original). The Court noted, however, that a defendant's Sixth Amendment right to trial by jury is not violated if the defendant stipulates to the facts upon which the sentence is based or consents to judicial fact finding. *Id.* at 2451. *Blakely* has not yet been extended to the federal sentencing guidelines, which are at issue here, *see Blakely*, 124 S. Ct. at 2538, n.9 ("The Federal Guidelines are not before us, and we express no opinion on them."), although the Supreme Court has recently heard arguments to extend the reasoning of *Blakely* to the federal sentencing regime. *See United States v. Booker*,

6

375 F.3d 508 (7th Cir. 2004), *cert. granted*, 73 U.S.L.W. 3073 (U.S. Aug. 2, 2004) (No. 04-104); *Fanfan v. U.S.*, No. 03-47, 2004 WL 1723114 (D. Maine 2004), *cert. granted*, 73 U.S.L.W. 3073 (U.S. Aug. 2, 2004) (No. 04-105).

The government correctly points out that we need not reach the *Blakely* issue in this restitution appeal. We recently held that a restitution order does not violate either *Blakely* or *Apprendi* if it does not exceed the statutory maximum restitution amount or the value of the damages to the victim. *United States v. Wooten*, 377 F.3d 1134, 1144 n.1 (10th Cir. Aug. 10, 2004). The district court here imposed restitution pursuant to 18 U.S.C. § 3663, which does not specify a statutory maximum for restitution. Moreover, Lewis does not, and has not, challenged that the restitution exceeds the amount her victims lost. Thus, under our holding in *Wooten*, the restitution Lewis was ordered to pay under 18 U.S.C. § 3663 does not exceed a statutory maximum and does not violate *Apprendi*.

WE AFFIRM.

Entered for the Court

Timothy M. Tymkovich
Circuit Court Judge

7